**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

INNOVATIVE AUTOMATION LLC,

        Plaintiff,

    v.

AUDIO AND VIDEO LABS, INC. d/b/a
 DISC MAKERS, et al.,

        Defendants.

Case No. 6:11-cv-00234-LED

**Innovative Automation's Opposition to Formats Unlimited, Inc.'s
Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(3)**

**Introduction**

Despite its assertions to the contrary, Defendant Formats Unlimited, Inc. ("Formats") has had extensive contacts with Texas. In the last five years alone, Formats has (i) specifically targeted its duplication services to residents of Houston, Dallas, and Austin; (ii) demonstrated its duplication products at a trade show in Dallas; (iii) sold its products through a distributor with a sales office in Houston; and (iv) provided interactive websites and an FTP Customer Site to residents of Texas.

In addition, Formats' MF Digital duplication devices have been sold in Texas, and in fact have been sold directly to the State of Texas. This is demonstrated by publicly available auction listings. The State of Texas is currently auctioning an MF Digital duplication device that it had purchased. (Kennedy Decl. Ex. 2.) Similarly, the University of Texas M.D. Anderson Cancer Center recently auctioned an MF Digital duplication devices that it had purchased. (Kennedy Decl. Ex. 3.)

Rather than acknowledge the sales of its products in Texas, Formats attempts to dodge the issue by arguing that it has not sold any duplication systems "since the date that the Patent was *assigned* to Plaintiff." (Br. 8 (emphasis added).) That argument is both meaningless and misleading because, as Formats knows, the Patent was assigned to Plaintiff very recently, in February 2011. Tellingly, Formats has declined to disclose the sales of its products in Texas before February 2011.

Finally, Formats argues that venue in this District is improper, and requests the Court to transfer this case to the Eastern District of New York. Formats ignores the fact that it is the *only* defendant based in New York, and that several other defendants are based in Texas or have offices and key witnesses in Texas. Thus, Formats' request would require this Court to sever Innovative Automation's claims against Formats. As this Court recently noted, severing claims and requiring piecemeal litigation "would be a waste of the courts' and parties' resources and could potentially lead to inconsistent results." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 2010 U.S. Dist. LEXIS 104125, *15-16 (E.D. Tex. Sept. 28, 2010). Formats' motion should be denied.

## Statement of Facts

### A.      The Parties

Defendant Formats Unlimited, Inc., based in New York, manufactures devices that duplicate digital media such as CDs and DVDs, and provides media duplication services throughout the world. (Kennedy Decl. Exs. 5, 16.) Formats markets and offers for sale some of its products and services under the name MF Digital. (*See* Kennedy Decl. Ex. 16; Br. at 5.)

Plaintiff Innovative Automation LLC, based in California, owns U.S. Patent No. 7,174,362 (the "Patent"), which generally describes and claims a computer-implemented method of digital data duplication. Innovative Automation alleges that certain Formats duplication devices infringe the Patent when they are operated, and that Formats infringes the Patent while performing its duplication services and while testing the infringing devices.

### B.      Formats Targets Texas Residents Through its Websites and FTP Customer Site.

Since at least as early as November 2007, Formats has specifically targeted its CD and DVD duplication services to residents of Texas. On one of its websites, *mfdigital.com*, Formats targets residents of Houston:



**CD DVD Duplication Houston, TX**

MF Digital offers quality CD DVD Duplication services to Houston and neighboring towns at low rates and quick turn-around times.  MF Digital staffs graphic design artists and maintains an expansive line of in-house CD DVD duplication equipment to handle all your CD DVD duplication job requests.

MF Digital, based on Long Island NY, offers our Fedex service for overnight delivery of your master to our facility. Not fast enough? FTP service is available. MF Digital ships your order anywhere in the country via two-day freight at ground prices. We offer the fastest turn times in the industry, meaning no one delivers to the Houston area, or any other city faster than MF Digital.

 (Kennedy Decl. Ex. 9; *see also* Kennedy Decl. Ex. 14)  On the same website, Formats targets residents of Dallas:

> **CD DVD Duplication Dallas, TX**
> **Nationwide DVD CD Duplication Services Provider**
>
> **Our nationwide CD DVD Duplication Services offer Dallas the very best in media duplication and replication.** We go the extra mile to earn your business, no matter where you are or what your application requires. Whatever your specific needs are for duplication, turn times, printing options or packaging --- we can do it all!
>
> We are based in NY and our turn times are lightning fast, with convenient online FTP services and industry-leading customer care. We staff graphic design artists and maintain an expansive collection of industry-leading CD DVD duplication and replication equipment to handle all of your media duplication service requests. Our main focus is your satisfaction and to ensure your long term business. Give us a chance to compete with your local business -- you will be glad you did.

(Kennedy Decl. Ex. 10; *see also* Kennedy Decl. Ex. 13.) Finally, Formats also targets residents of Austin:

> **CD DVD Duplication Austin, TX**
> **Nationwide DVD CD Duplication Services Provider**
>
> **Our nationwide CD DVD Duplication Services offer Austin the very best in media duplication and replication.** We go the extra mile to earn your business, no matter where you are or what your application requires. Whatever your specific needs are for duplication, turn times, printing options or packaging --- we can do it all!
>
> We are based in NY and our turn times are lightning fast, with convenient online FTP services and industry-leading customer care. We staff graphic design artists and maintain an expansive collection of industry-leading CD DVD duplication and replication equipment to handle all of your media duplication service requests. Our main focus is your satisfaction and to ensure your long term business. Give us a chance to compete with your local business -- you will be glad you did.

 (Kennedy Decl. Ex. 11; *see also* Kennedy Decl. Ex. 15.)

Formats owns and operates a website, *rapidCD.com*, which allows customers—including customers in Texas—to order Formats products. (Kennedy Decl. Ex. 4.) In particular, customers can locate the products they want to purchase, and then click on an "Order" button next to those products. (*Id.*) Users are then prompted to input their shipping and payment information to complete the transaction. (*Id.*)

Formats also provides an FTP Customer Site that enables its customers to remotely provide CDs and DVDs for duplication. (Kennedy Decl. Ex. 1.) Using the FTP Customer Site, a customer can upload digital files from his or her computer to Formats, so that the files can be processed and duplicated. (*Id.*) The FTP Customer Site is accessible through Formats' main

website, *formats-unlimited.com*. (Kennedy Decl. Ex. 19.) Using a form on that website, customers are prompted to enter an FTP address, a login name, and a password, in order to begin the process of uploading their files for duplication. (*Id*.) Formats specifically targets this FTP Customer Site to residents of Texas. (Kennedy Decl. Exs. 9, 10, 11, 13, 14, 15.)

Formats' website *formats-unlimited.com* also provides a form that enables customers to request a quote for duplication services. (Kennedy Decl. Ex. 6.) And Formats' *mfdigital.com* website enables purchasers of the accused SCRIBE duplicators to register their products. (Kennedy Decl. Ex. 7.) Each of these forms is configured so that they can be used by residents of Texas. (Kennedy Decl. Exs. 6, 7.)

### C.       Formats Demonstrated its Duplication Devices at a Trade Show in Dallas.

In January 2006, Formats announced that its MF Digital products would be on display at the four-day NRB industry trade show in Dallas, Texas, and that an MF Digital representative would attend the show to answer questions, demonstrate the devices, and discuss Formats' duplication services:

> **Wednesday, January 18, 2006**
>
> **MF Digital to Display Equipment at NRB in Dallas TX**
> MF Digital products will be on display at NRB 2006 in Dallas, TX., from February 19 through 22, 2006. Audio Video Distributors, of Wixom, Michigan, will be displaying several models of MF Digital's award winning CD and DVD production equipment (Booth #316). In addition to AVD's very capable and knowledgeable staff, a MF Digital representative will be on hand to answer your questions, demonstrate the gear, or discuss any CD or DVD production need you might have.

(Kennedy Decl. Ex. 8.)

### D.       Formats Targets Texas Residents Through its Distributors.

Until at least November 2008, Formats offered its products through Audio-Video Distributors, which attended the Dallas trade show with Formats. (Kennedy Decl. Exs. 8, 12.)

Currently, Formats offers its accused products through Disc Makers, a defendant in this case. (Kennedy Decl. Ex. 17.) Disc Makers sells products throughout the United States, and has a sales office in Houston. (Kennedy Decl. Ex. 18.)

### E.       Texas Residents Have Purchased Formats' Duplication Devices

The precise number of products that Formats has sold in Texas is unknown, but publicly available listings from recent auctions show that Formats' devices have been sold, and used, in Texas. The State of Texas is currently auctioning an MF Digital duplication device that it had purchased. (Kennedy Decl. Ex. 2.) Similarly, the University of Texas M.D. Anderson Cancer Center recently auctioned an MF Digital duplication devices that it had purchased. (Kennedy Decl. Ex. 3.)

### Applicable Law

Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: (i) whether the forum state's long arm statute permits service of process, and (ii) whether the assertion of jurisdiction would be inconsistent with due process. *See Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270-71 (Fed. Cir. 1998). Because the Texas long-arm statute is coextensive with the limits of due process, the sole inquiry is whether jurisdiction comports with due process. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). The exercise of personal jurisdiction over a nonresident defendant comports with due process requirements if (i) the defendant has "minimum contacts" with the forum, and (ii) the assertion of jurisdiction would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

The "minimum contacts" requirement can be established through either a finding of general jurisdiction or specific jurisdiction. *See LSI Indus. Inc. v. Hubbell Lighting Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). To show general jurisdiction, Innovative Automation need only show that Formats "maintains 'continuous and systematic' contacts with the forum state." *Id.* In contrast, "[s]pecific jurisdiction 'arises out of' or 'relates to' the cause of action even if those

contacts are 'isolated and sporadic.'" *Id.* Once minimum contacts have been shown, the burden is on the defendant to establish that the assertion of jurisdiction is not reasonable. *Elecs. for Imaging v. Coyle*, 340 F.3d 1344, 1351-52 (Fed. Cir. 2003).

Because Innovative Automation has not had an opportunity to conduct any discovery regarding personal jurisdiction, it need only make a prima facie showing that Formats is subject to personal jurisdiction in Texas to overcome Formats' motion to dismiss. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005).

## Argument[1]

### I.     This Court Has Personal Jurisdiction Over Formats.

This Court has personal jurisdiction over Formats because Formats has, at a minimum, (i) specifically targeted its duplication services to residents of Houston, Dallas, and Austin; (ii) demonstrated its duplication devices at a trade show in Dallas; (iii) sold its products through a distributor with a sales office in Houston; (iv) provided interactive websites and an FTP Customer Site to residents of Texas; and (v) provided Texas residents with MF Digital duplication devices.

### A.     Formats Targets its Media Duplication Services to Residents of Texas

Formats asserts that it "does not direct any advertising to Texas," and that its "websites are not specifically directed to consumers in Texas." (Br. at 8, 10; *see also* Cosentino Decl. ¶¶ 34, 35.) Those assertions are false. Since at least November 2007, Formats has intentionally targeted its media duplication services to residents of Texas using its website, *mfdigital.com*. Specifically, Formats targets residents of Houston, Dallas, and Austin using three separate webpages. (*See supra* pp. 3-4; Kennedy Decl. Exs. 9, 10, 11, 13, 14, 15.) Those webpages state that Formats "offers quality CD DVD Duplication services to Houston and neighboring towns,"

---

[1] Formats' brief contains a number of assertions regarding validity and infringement. Because these assertions are irrelevant to the issue of personal jurisdiction, Innovative Automation declines to address them here. Innovative Automation will gladly respond to Formats' assertions if and when they are raised in an appropriate motion.

and that Formats' "[s]ervices offer Dallas [and Austin] the very best in media duplication and replication." (*Id.*)

Formats' decision to specifically target its services to residents of Texas establishes minimum contacts. *See Mass Engineered Design, Inc. v. 9X Media, Inc.*, 2011 U.S. Dist. LEXIS 31519 (E.D. Tex. Mar. 25, 2011) (party had minimum contacts with Texas because its website sought potential retailers in Texas); *Autobytel, Inc. v. InsWeb Corp.*, 2009 U.S. Dist. LEXIS 31287 (E.D. Tex. Mar. 31, 2009) (minimum contacts established by "evidence of targeted advertising on the Carsdirect website"); *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 104 (1987) (noting that "advertising in the forum State" supports a finding of minimum contacts); *Inset Sys. v. Instruction Set*, 937 F. Supp. 161 (D. Conn. 1996) (minimum contacts established where company directed advertising activities to the forum state via the internet).

**B.**     **Formats Operates Active Websites and an FTP Customer Site, and Targets them to Residents of Texas.**

Contrary to Formats' assertions, Formats operates highly interactive websites, as well as an FTP Customer Site, that are directly targeted at Texas. Even setting aside the Texas-targeted advertising discussed above, the interactive features of these websites and FTP Customer Site establish minimum contacts with Texas.

As this Court recently noted, whether a defendant's website establishes minimum contacts depends on "the interactivity and nature of the forum contacts." *Variant, Inc. v. Flexsol Packaging Corp.*, 2009 U.S. Dist. LEXIS 86839, *5-6 (E.D. Tex. Sept. 21, 2009). "A passive website, which only allows the owner to post information to the site, is not sufficient to establish personal jurisdiction." *Id.* On the other hand, "[a] website whose owners engage in repeated online contacts with forum residents through the site will likely satisfy the minimum contacts requirement." *Id*. "In between are websites with some interactive elements and allow for bilateral information exchange." *Id*.

Formats asserts that (i) it operates three websites (*formats-unlimited.com*, *mfdigital.com*, and *formatsdupe.com*), and (ii) these websites "are a passive form of advertising and orders cannot be made directly on the website." (Br. at 8; see also Cosentino Decl. ¶¶ 35, 36.)

Formats is wrong on both counts. Formats fails to mention that it operates an additional website, *rapidCD.com*, that enables customers—including customers in Texas—to place orders for Formats' duplication products. (Kennedy Decl. Ex. 4.) Using *rapidCD.com*, customers can locate the products they want to purchase, and then click on an "Order" button next to those products. (*Id.*) The website then prompts users to input their shipping and payment information to complete the transaction. (*Id.*)

Formats also fails to mention that it operates an FTP Customer Site that enables customers—including customers in Texas—to upload digital files for duplication. (*See supra* pp. 4-5; Kennedy Decl. Exs. 1, 19.) Formats states on one of its websites that "[t]his is a huge time saver as there is no need for all the time and money spent in mailing or coming into our offices personally to deliver artwork—it can be transferred instantly to us online." (Kennedy Decl. Ex. 1.) Formats specifically targets this FTP Customer Site to residents of Texas, and discusses the FTP Customer Site on its advertising pages directed at residents of Houston, Dallas, and Austin. (Kennedy Decl. Exs. 9, 10, 11, 13, 14, 15.)

Formats also neglects to mention the interactive features of its *formats-unlimited.com* and *mfdigital.com* websites. *Formats-unlimited.com* has an interactive feature that enables customers to submit a form in order to receive a quote for media duplication services. (Kennedy Decl. Ex. 6.) Similarly, *mfdigital.com* contains a Product Registration Form that enables customers who purchased the accused MF Digital SCRIBE duplicators to register those devices. (Kennedy Decl. Ex. 7.) The forms on each of these websites contain dropdown boxes where customers can select their state of residence, including Texas. (Kennedy Decl. Exs. 6, 7.) Accordingly, Formats is wrong that these websites are merely "passive."

Formats' multiple websites and FTP Customer Site establish minimum contacts with Texas. In *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669 (E.D. Tex. 2006), minimum

contacts was found where "[t]he website has a drop-down menu that allows the potential customer to identify its state and receive *state-sp*ecific quotes [and] [p]otential customers can also fill out an online form and apply for Rapidpay's services through its website." Similarly, the form on Formats' website also contains a drop-down menu that enables customers to identify their state to receive a quote that would include the cost of shipping to that state. (Kennedy Decl. Ex. 6.) In addition, users can fill out Formats' Product Registration Form on the MF Digital website to apply for any product services offered by Formats to registered users. (Kennedy Decl. Ex. 7.) *See Variant,* 2009 U.S. Dist. LEXIS 86839, *5-6 (single website established minimum contacts with Texas because (i) it allowed potential customers to book services and purchase products; (ii) it enabled users to enter their email addresses to receive special offers and tips; and (iii) it allowed users to provide their contact information so that the party's representative could respond to their request).

### C.      Formats Demonstrated its Products at a Trade Show in Texas.

In January 2006, Formats announced that its MF Digital products would be on display at the four-day NRB industry trade show in Dallas, Texas, and that an MF Digital representative would attend the show to answer questions, demonstrate the devices, and discuss "any CD or DVD production need you might have." (*See supra*, p. 5; Kennedy Decl. Ex. 8.)

These activities, which Formats does not mention in its brief, further support a finding of minimum contacts. *See Aerotech Holdings, Inc. v. Alliance Aero. Eng'g, LLC*, 650 F. Supp. 2d 594 (N.D. Tex. 2009) (minimum contacts established in part because defendant attended a trade show in Texas); *Nations AG II, L.L.C. v. Hide Co. L.L.C.*, 2004 U.S. Dist. LEXIS 12205 (N.D. Tex. June 29, 2004) (same).

Formats cannot argue that its participation in the Dallas trade show is irrelevant because it occurred before the patent-in-suit issued. Conduct that establishes a connection between an accused infringer and the forum state is relevant regardless of whether it occurred before the patent issued. *Genetic Implant Sys.*, 123 F.3d at 1458 ("The fact that [the activities in the forum]

may have occurred before the grant of the patent is irrelevant since they do show that Core-Vent engaged in substantial activities in the state. It is jurisdiction that is at issue, not liability for patent infringement.")

        **D.**      **Formats, Through at Least One Distributor, Currently Sells Products in Texas.**

Because Formats does not discuss its distributors in its brief, Innovative Automation has had to rely on publicly available information. That information, however, indisputably demonstrates that Formats currently offers the accused products through Disc Makers, which is also a defendant in this case. (Kennedy Decl. Ex. 17.) Disc Makers sells products throughout the United States, and has a sales office in Houston. (Kennedy Decl. Ex. 18.)  Formats' relationship with Disc Makers further supports a finding of minimum contacts. *See Asahi Metal Indus. Co.*, 480 U.S. at 104 (noting that "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" is an example of conduct that can establish minimum contacts).

        **E.**      **Formats Has Sold Its Duplication Devices in Texas.**

Innovative Automation has not had the opportunity to conduct any discovery regarding Formats' sales. Nevertheless, the scant public record that exists shows that Formats' duplication devices have been sold, and used, in Texas. The State of Texas is currently auctioning an MF Digital duplication device that it had purchased. (Kennedy Decl. Ex. 2.) Similarly, the University of Texas M.D. Anderson Cancer Center recently auctioned an MF Digital duplication device that it had purchased. (Kennedy Decl. Ex. 3.)

Formats nevertheless argues that it has not sold any duplication systems or provided any disc duplication services to anyone in Texas "since the date that the Patent was ***assigned*** to Plaintiff." (Br. at 8, 10-11; Cosentino Decl. ¶ 38 (emphasis added).) That argument is both meaningless and misleading because, as Formats knows, the Patent was assigned to Plaintiff very recently, in February 2011. For the purposes of establishing general jurisdiction, the date the patent issued—let alone the date the patent was assigned—has no bearing. *See Genetic Implant*

*Sys. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) ("The fact that [the activities in the forum] may have occurred before the grant of the patent is irrelevant since they do show that Core-Vent engaged in substantial activities in the state. It is jurisdiction that is at issue, not liability for patent infringement."). Tellingly, Formats has declined to disclose *any* information regarding the sales of its products or services in Texas before February 2011.

      **F.**      **These Facts Establish Minimum Contacts.**

To establish that Formats has minimum contacts, Innovative Automation need only show that Formats is subject to either general jurisdiction or specific jurisdiction. *See LSI Indus*, 232 F.3d at 1369. General jurisdiction is established by Formats' continuous and systematic contacts with Texas, including (i) specifically targeting its duplication services to residents of Houston, Dallas, and Austin; (ii) demonstrating its duplication devices at a trade show in Dallas; (iii) selling its products through a distributor with a sales office in Houston; (iv) providing interactive websites and an FTP Customer Site to residents of Texas; and (v) providing Texas residents with MF Digital duplication devices. Any one of these facts, when considered alone, could be sufficient to establish general jurisdiction. Considered together, these facts irrefutably establish this Court's general jurisdiction over Formats.[2]

      **G.**      **Exercising Jurisdiction Over Formats Would Not Offend Traditional Notions of Fair Play and Substantial Justice.**

Once the plaintiff makes a prima facie showing that the defendant has "minimum contacts" with the forum (either through general or specific jurisdiction), it is the defendant's burden to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Elecs. for Imaging v Coyle*, 340 F.3d 1344, 1351-52 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).) To determine whether the exercise

---

[2] Innovative Automation believes that it could also establish specific jurisdiction, if given an opportunity to conduct jurisdictional discovery. "Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.'" *LSI Indus.*, 232 F.3d 1369 at 1375. In light of the auction activity discussed above, Innovative Automation believes that many Formats devices are being operated in Texas in a manner that infringes the Patent. In addition, Innovative Automation believes it is likely that the sales of at least some of these devices arose out of Formats' activities at the Dallas trade show.

of jurisdiction is reasonable, courts consider: (1) the burden on the defendant; (2) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (3) the interests of the forum state; (4) the interest of the states in furthering their social policies; and (5) the plaintiff's interest in obtaining relief. *See Viam v. Iowa*, 84 F.3d 424, 429 (Fed. Cir. 1996). Jurisdiction is reasonable in Texas under all of these factors.

Formats alleges that its burden of litigating in Texas would be "great." However, this is not one of those "rare" cases in which an alleged burden on a defendant could defeat otherwise proper jurisdiction. *See Beverly Hills v. Royal Sovereign*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (finding defendants unable to present a compelling case that it would be unreasonable for the forum-state to exercise jurisdiction). As discussed above, Formats has conducted business in Texas, and recently sent at least one representative to Texas to participate in an industry trade show.

## II.      The Eastern District of Texas is the Proper Venue For This Litigation.

Formats next argues that the Eastern District of Texas is an improper venue for this litigation, and requests the Court to transfer this lawsuit to the Eastern District of New York. (Br. at 12-15.) That request should be denied.

A party seeking to transfer venue "must show good cause." *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. Tex. 2008). "[T]o show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* Accordingly, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*

Formats has failed to show that the Eastern District of New York is clearly more convenient than the Eastern District of Texas. There are ten defendants in this case.[3] All of them are based in different states. Audio and Video Labs, Inc. is based in New Jersey; CustomCD, in

---

[3] Four defendants have been dismissed without prejudice.

Oregon; Cycle, Inc., in Minnesota; Digital Media Group LLC, in Maryland; Duplium Limited

Partnership, in Texas; Formats Unlimited, in New York; GoldenRom Optical Disc Corporation,

in Pennsylvania; Great Lakes Media Technology, Inc., in Wisconsin; Singulus Mastering B.V.,

in the Netherlands; Singulus Technologies, Inc., in Connecticut; U.S. Digital Media, Inc., in

Arizona; and World Media Group, Inc., in Indiana. Formats has not shown, or even argued, that

the Eastern District of New York would be convenient for *any* of the other defendants, or even

that personal jurisdiction would lie over any of the other defendants in the Eastern District of

New York. In fact, Formats' counsel, who also represents Defendant U.S. Digital Media, Inc.,

asks this Court in a separate motion to transfer this case to the District of Arizona. (Dkt. No. 52

at 13-15.)

Although it is unclear from its brief, Formats may believe that this Court should sever

Innovative Automation's claims against Formats, and transfer only those claims to New York.

As this Court recently recognized, however, severance does not promote judicial economy

where, as here, the defendants are accused of infringing the same patent:

> The Court DENIES Defendants' request to sever any defendants.
> Severance would not promote judicial economy. All defendants are
> accused of infringing the patents in suit, and adjudicating
> infringement will require construing the claims and evaluating the
> patents' innovation over the prior art. Thus, determining
> defendants' liability will involve substantially overlapping
> questions of law and fact. *See MyMail, Ltd. v. Am. Online, Inc.*,
> 223 F.R.D. 455 (E.D. Tex. 2004) (Davis, J.); *see also* Fed. R. Civ.
> P. 42(a) (authorizing courts to consolidate or join for trial actions
> that involve common questions of law or fact). For multiple courts
> to simultaneously address these identical issues would be a waste
> of the courts' and parties' resources and could potentially lead to
> inconsistent results. Moreover, the record before the Court does
> not show that the products or methods at issue are so different that
> determining infringement in one case is less proper or efficient
> than determining infringement in multiple cases. Nor does the
> record show that any defendant will be so prejudiced by joinder
> that severance is necessary to prevent an inequitable process or
> result. *See* Fed. R. Civ. P. 42(b). Accordingly, the Court will not at
> this time sever any defendant and will consider all defendants in its
> transfer analysis.

*Eolas Techs., Inc. v. Adobe Sys., Inc.*, 2010 U.S. Dist. LEXIS 104125, *15-16 (E.D. Tex. Sept.

28, 2010).

Indeed, if the defendants, considered as a whole, have a connection to any district, it is the Eastern District Texas. Cycle, Inc. performed its duplication services in a large facility in Plano, Texas.[4] (*See* Complaint ¶ 19.) Duplium Limited Partnership's headquarters are in Carrollton, Texas, and are approximately three miles outside the Eastern District of Texas. (*Id.*) And Audio and Video Labs, Inc. maintains an office and manufacturing facility in Houston that is approximately thirty miles outside the Eastern District of Texas. (*Id.*) Further, as demonstrated above, Formats' products were demonstrated at a trade show in Dallas, and were sold to residents of Texas and the State of Texas itself.

**III.    Although Formats' Motion Should Be Denied Without Jurisdictional Discovery, Innovative Automation Is Entitled to Take Jurisdictional Discovery If Needed.**

Even without having conducted any jurisdictional discovery, Innovative Automation has made the required prima facie showing to warrant denial of Formats' motion. However, in no event should Formats' motion be granted without affording Innovative Automation the opportunity to conduct jurisdictional discovery. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d at 1275, 1283 (vacating district court's order dismissing case, because district court failed to allow the plaintiff to undertake jurisdictional discovery); *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, No. 07-cv-0309 L (AJB), 2007 WL 2238900, at *4 (S.D. Cal. Aug. 2, 2007) ("Plaintiff should not be bound solely by the contents of the two declarations submitted by Defendants or by Defendant's conclusions that the contacts disclosed therein are insufficient to establish personal jurisdiction."). If the Court is not convinced that it has personal jurisdiction over Formats based on the facts described above, Innovative Automation respectfully requests jurisdictional discovery. Among other things, Innovative Automation should be entitled to conduct discovery regarding the sales of Formats' products to Texas residents; Formats' marketing activities in Texas; Formats' activities at the Dallas trade

---

[4] Cycle's extensive contacts with the Eastern District of Texas, including its activities with respect to the Plano manufacturing facility, will be described in detail in Innovative Automation's opposition to Cycle's motion to dismiss.

show; the activities of Formats' distributors in Texas; and the extent to which Formats' four

websites and FTP Customer Site have been visited and used by residents in Texas.

**Conclusion**

For the reasons stated above, Innovative Automation respectfully requests that the Court

deny Formats' motion to dismiss.

Dated: July 27, 2011                                   Respectfully submitted,


_____
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Todd Kennedy, Esq.
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 789-6390
Facsimile: (415) 449-6469
adam@gutridesafier.com
seth@gutridesafier.com
todd@gutridesafier.com

Victoria L.H. Booke
Peter Ajlouny
BOOKE & AJLOUNY LLP
606 North First Street
San Jose, California 95112
Telephone: (408) 286-7000
Facsimile: (408) 286-7111
vbooke@gmail.com
peter@bookelaw.com

Jennifer Parker Ainsworth
Texas State Bar No. 00784720
WILSON, ROBERTSON &
CORNELIUS, P.C.
P.O. Box 7339
Tyler, Texas 75711
Telephone: (903) 509-5000
Facsimile: (903) 509-5092
jainsworth@wilsonlawfirm.com

Attorneys for Plaintiff Innovative
Automation LLC

16

## CERTIFICATE OF SERVICE

The undersigned certifies that, on **July 27, 2011**, the foregoing document was served on

all counsel of record who have consented to electronic service via the Court's CM/ECF system.


Dated: **July 27, 2011**

Todd Kennedy, *pro hac vice*
Gutride Safier LLP
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 789-6390
Facsimile: (415) 449-6469
todd@gutridesafier.com